# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JOSHUA VAN LAAN,**

     Plaintiff,

vs.

Case No: 23-cv-
Hon.
Mag.

**MACOMB COUNTY,** *a political Subdivision*
*of the State,*
**PETER LUCIDO,** *in his individual and official capacity*,
and
**DONALD FRESARD,** *in his individual and official capacity.*

     Defendants.

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Joshua VanLaan, by his attorneys, Deborah Gordon Law, complains

against Defendants Macomb County, Peter Lucido, and Donald Fresard as follows:

1

## Overview

1.      This is an action by Plaintiff Joshua VanLaan against Defendants Macomb County, Peter Lucido, and Donald Fresard for depriving Plaintiff of his rights under the United States Constitution, violating Michigan's Whistleblower Protection Act, retaliating against him for opposing unlawful discrimination in violation of Michigan law, and interfering with his contract and/or business relationship in violation of Michigan law.

2.      Throughout 2022, Plaintiff opposed several unlawful actions by Defendants, including sexual harassment, gender, race, and disability discrimination against employees, and retaliation against members of the public.

3.      Plaintiff participated in an internal investigation of Defendant Lucido and provided evidence supporting the investigators' conclusions that Lucido sexually harassed female employees and treated them differently than male employees, and that Lucido engaged in race and disability discrimination. Lucido knew of Plaintiff's participation.

4.      Plaintiff also opposed race discrimination against the public by refusing to negotiate a harsher plea deal for a Black protester than his white counterparts.

5.      Finally, Plaintiff opposed and reported Defendant Lucido for retaliating against a member of the public who had sued him.

6. Plaintiff's protected activity infuriated Defendants, who retaliated against Plaintiff by pre-determining that he would be fired from his long-standing position as an Assistant Prosecuting Attorney.

7. Defendants brought a series of false allegations against Plaintiff, which they used to terminate him on December 22, 2022, thereby violating his Constitutional right to procedural due process as well as Michigan law as set forth below.

## Jurisdiction and Parties

8. This Court has federal subject matter jurisdiction pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 28 U.S.C. § 1343, 28 U.S.C. § 1331, and 28 USC § 1367.

9. Plaintiff Joshua VanLaan ("Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

10. Defendant Macomb County ("Defendant County") is a political subdivision of the State of Michigan.

11. Defendant Peter Lucido ("Defendant Lucido") is an individual, who at all pertinent times served as Macomb County Prosecutor and is a resident of Michigan and resides in the Eastern District of Michigan.

12. Defendant Donald Fresard ("Defendant Fresard") is an individual, who at all pertinent times served as Chief Assistant Prosecuting Attorney and is a resident of Michigan and resides in the Eastern District of Michigan.

13. Defendants County, Lucido, and Fresard will collectively be referred to herein as "Defendants" unless more specifically referenced.

14.     The events giving rise to this matter occurred in the Eastern District of Michigan, and as a result venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391.

## Background Facts

15.     Plaintiff has worked for the Macomb County Prosecutor's Office as an Assistant Prosecuting Attorney ("APA") for 11 years.

16.     As an APA, Plaintiff prosecuted thousands of criminal cases involving felony and misdemeanor state law violations and tried scores of cases including for murder, criminal sexual conduct, child abuse, drug offenses, and violent crimes in Macomb County's courts.

17.     Before and during law school, Plaintiff served in the United States Air Force and Michigan Air National Guard for 10 years, where he achieved the rank of Technical Sergeant. During his military service, Plaintiff received numerous awards, including the Air Force Commendation Medal, Air Force Achievement Medals, the Global War on Terrorism Expeditionary Medal, and the National Defense Service Medal.

18.     Defendant Lucido was elected as Macomb County Prosecutor in November 2020 and began his term in January 2021.

19.     Before being elected as prosecutor, Defendant Lucido served in the Michigan State Senate for the 8th District.

20.     While in the Senate, Defendant Lucido was publicly accused of multiple instances of sexual misconduct, including verbal harassment and inappropriate touching. A Senate investigation found that Lucido engaged in inappropriate workplace behavior, and he was removed as Chair of the Advice and Consent Committee.[1]

21.     Defendant Lucido appointed Defendant Fresard as Chief Assistant Prosecuting Attorney in March 2022.

### Plaintiff Reported and Opposed Unlawful Retaliation Against the Public

22.     In July 2020, the Reverend Willie J. Rideout was arrested and charged with a misdemeanor in connection with his participation in a public protest against Shelby Township Police Chief Robert Shelide, who had made public, racist comments online referring to individuals protesting against racism and police brutality against people of color ("I would hit them with tear gas and water cannons. Rubber bullets." "[U]nleash the real cops and let them take care of these barbarians. I promise it will be over in 24 hours." "Wild savages. I wish to God I would have been there. Body bags for these vicious subhumans.") *See* Case 2:22-cv-11597-MFL-DRG, ECF No. 4, PageID.100-101.

23.     Plaintiff was one of the Macomb County APAs assigned to the Rideout case.

---

[1] Steve Carmody. State Senate punishes lawmaker after investigation of sexual harassment allegations. Michigan Radio. March 5, 2020. https://www.michiganradio.org/politics-government/2020-03-05/state-senate-punishes-lawmaker-after-investigation-of-sexual-harassment-allegations

24.     Rideout's attorney filed a motion to have the charge dismissed. In connection with this motion, Rideout's attorney also filed a motion for an evidentiary hearing, which was unopposed by the County.

25.     On April 18, 2022, at an 11:00 a.m. hearing, the court verbally held that the charge against Rideout was dismissed. Plaintiff notified Defendant Lucido within the hour.

26.     Defendant Lucido and Plaintiff decided that Plaintiff should explore the possibility of an appeal of the dismissal based on an underlying legal technicality.

27.     On April 18, 2022, Plaintiff and the head of the Appellate Division, Joshua Abbott, agreed that an appeal would not be filed, but that they should explore whether a motion for reconsideration should be filed based on the legal technicality Plaintiff had identified.

28.     On April 29, 2022, Plaintiff and Abbott agreed that a motion for reconsideration would be filed and confirmed that the County should not appeal the dismissal of the low-level misdemeanor charge.

29.     On May 4, 2022, Plaintiff so advised Defendant Lucido.

30.     Defendant Lucido agreed and said that the County "should just let sleeping dogs lie." Defendant Lucido told Plaintiff that he wanted the Rideout case and several other cases involving police brutality protesters resolved as quickly as possible.

31.     On May 5, 2022, Plaintiff obtained a signed order dismissing the charge against Rideout.

32.    On May 27, 2022, Plaintiff filed a motion for reconsideration of the May 5, 2022 order of dismissal.

33.    The motion was technically due by 11:59 p.m. on May 26, 2022. Plaintiff filed it the next morning. The trial court accepted and decided the motion.

34.    On June 9, 2022, the motion for reconsideration was denied because the legal standard for reconsideration was not satisfied.

35.    On June 10, 2022, Plaintiff informed Defendant Lucido that the motion for reconsideration had been denied.

36.    Defendant Lucido asked if the case was "over", and Plaintiff confirmed that it was. Defendant Lucido reiterated his desire to resolve all the protest cases, including Rideout's, as quickly as possible.

37.    On July 14, 2022, Rideout sued Defendants County and Lucido for violating his First Amendment rights by arresting him and charging him with a crime while he was in the midst of protesting.

38.    On July 14, 2022, Defendant Lucido informed Plaintiff that Rideout had sued Lucido, and that based on the lawsuit, he now wanted to file an appeal of the dismissal of the Rideout case. Defendant Lucido instructed Plaintiff to "make sure we wait a couple of days before we file [the appeal] so that it does not look like retaliation."

39.    Plaintiff did not file an appeal or an application for leave to appeal. He believed Defendant Lucido was retaliating against Rideout for suing Lucido and the County.

40. Plaintiff immediately reported his concern about retaliation by Lucido to the County and was instructed to take no further action related to the Rideout case.

41. Plaintiff informed his supervisor, Sian Hengeveld, of the situation, who stated that she would handle the case going forward.

42. On July 21, 2022, Defendant Lucido called Plaintiff into his office area. Two men that Plaintiff did not recognize were also present.

43. Defendant Lucido again inquired about an appeal in the Rideout criminal case. Plaintiff informed Defendant Lucido that he had turned the case over to Hengeveld.

44. Defendant Lucido asked Plaintiff whether a successful appeal would "put a stop to" Rideout's civil lawsuit. Plaintiff told him it would not, and that to the contrary it would likely provide fodder for more claims against Lucido and the County.

45. Plaintiff immediately reported this conversation to the County and reiterated his belief that Defendant Lucido was retaliating against Rideout for filing his civil lawsuit in violation of the First Amendment by instructing County prosecutors to pursue an appeal in the criminal case.

46. In early August 2022, the County informed Defendants Lucido and Fresard of Plaintiff's reports of First Amendment retaliation.

47. In response to Plaintiff's reports, Defendant Fresard told Defendant Lucido that Plaintiff was "imperil[ing] [his] employment."

## Plaintiff Participated in an ELCRA Investigation into Defendant Lucido and Assisted Others in Participating

48.     Between 2021 and early 2022, Plaintiff observed, and was advised by his coworkers, that Defendant Lucido engaged in unlawful employment actions, including discrimination and harassment.

49.     Plaintiff observed and was told that Defendant Lucido treated female employees in an offensive and less favorable manner compared to male employees.

50.     A female coworker confided in Plaintiff that Defendants Lucido and Fresard had verbally and physically sexually harassed her.

51.     Plaintiff also observed and was advised by coworkers that Defendant Lucido engaged in race and disability discrimination against employees.

52.     Plaintiff advised his coworkers that it appeared that Defendants Lucido and Fresard were engaging in unlawful harassment and discrimination based on gender, race, and disability.

53.     Plaintiff encouraged and assisted his coworkers in reporting their concerns about sexual harassment, and race and disability discrimination by Defendants Lucido and Fresard to human resources.

54.     In March 2022, after several of Plaintiff's coworkers had complained to human resources about Defendants Lucido and Fresard, Defendant County hired an outside law firm, Butzel-Long, to conduct an internal investigation.

55.     Plaintiff was interviewed as a witness in the Butzel-Long investigation.

56. Plaintiff told the Butzel-Long investigators about his own issues with Defendant Lucido, including that Lucido had suspended him without cause.

57. The Butzel-Long investigators also asked Plaintiff questions about his coworkers' claims of gender discrimination, sexual harassment, and race and disability discrimination.

58. Plaintiff told the investigators about several instances when he observed and had been advised that Defendants Lucido and Fresard engaged in sexual harassment, and gender, race, and disability discrimination.

59. Plaintiff also reported that Lucido used race and other protected categories in making assignments for APAs.

60. On July 8, 2022, Butzel-Long released its Workplace Investigation Report.

61. The Butzel-Long Report concluded that, "Prosecutor Lucido treats female employees in an offensive manner and less favorably than male employees…Prosecutor Lucido has made inappropriate statements containing sexual comments and/or sexual innuendo."

62. The Butzel-Long Report further concluded that, "Prosecutor Lucido used race as a factor to determine which APA he would assign to the warrant division." The Investigator further concluded that Defendant Lucido "likely" refused to give an APA an assignment due to his disability and/or his request for a reasonable accommodation.

63. The Butzel-Long Report also concluded that Defendant Lucido had no legitimate basis to suspend Plaintiff on two prior occasions.

64.     The Butzel-Long Report made various other findings against Defendant Lucido, including that he used Macomb County personnel and other County resources for personal and campaign-type activities.

65.     The Butzel-Long Report was subsequently leaked to the media. Several local media outlets, including The Detroit Free Press, The Detroit News, and M-Live reported on the story, and The Detroit News ran a copy of the report.[2]

66.     Although the Butzel-Long Report redacted employees' names, their identities would have been obvious or easily discernable for a wide audience, including Defendants and other Macomb County officials, employees of the Macomb County Prosecutor's Office, and others connected to the County or the Prosecutor's Office.

67.     Additionally, Plaintiff's name was left unredacted in one part of the report.

68.     Defendants Lucido and Fresard were infuriated by the media attention surrounding the Butzel-Long Report.

69.     After reading the Butzel-Long Report, Defendants Lucido and Fresard knew that Plaintiff had participated in the investigation and concluded that he provided information regarding their engagement in unlawful harassment and discrimination.

---

[2] Haley Harding, The Detroit News, Macomb Prosecutor Lucido made 'brutal,' 'rude' remarks to employees, probe finds. July 12, 2022. https://www.detroitnews.com/story/news/local/macomb-county/2022/07/12/pete-lucido-macomb-county-prosecutor-investigation-rude-comments-findings/10036737002/

70.     Five days after the Butzel-Long Report was published, on July 19, 2022, Defendant Lucido appeared on the "ML Soul of Detroit" podcast.

71.     Defendant Lucido admitted during the podcast that he intended to retaliate against Plaintiff for participating in the investigation.

72.     Lucido stated that: "No one's going to get in my way and that's just the way it's going to be…Somebody derailed and came up with a great idea to make a smear Report. And that's just not the way it's going to be played out…And we're going to have accountability, one way or another, for that Report."

### Plaintiff Opposes Race Discrimination Against the Public

73.      In addition to the Rideout case, Plaintiff was assigned to the cases of five other protesters who were charged in connection with 2020 protests against Shelby Township Police Chief Robert Shelide.

74.     In summer 2022, Plaintiff began negotiating plea deals in these cases in an effort to resolve them.

75.     During the negotiations, Plaintiff learned that the Shelby Township Police Department, led by Police Chief Robert Shelide, wanted the County to offer a more favorable plea deal with lesser penalties to the four white protesters, but not to the one Black protester, even though all the protesters engaged in similar conduct and were charged with identical felonies.

76.     Plaintiff refused to do so, as he believed this was race discrimination.

77.     Plaintiff advised Defendant Lucido of his concern about race discrimination and of his plan to offer all five protesters the same plea deal.

78.     Plaintiff ultimately and properly negotiated the same or similar plea deals for all five of the protesters.

### Defendants Retaliated Against Plaintiff and Denied him Due Process by Suspending Plaintiff After a Sham Disciplinary Proceeding and Terminating his Employment

79.     By August 2022, Plaintiff had thoroughly enraged Defendants Lucido and Fresard by implicating them in ELCRA violations against employees and the public and by reporting and opposing their unlawful retaliation against Rideout.

80.     Defendants Lucido and Fresard pre-determined that, because of this protected activity, Plaintiff would be terminated from his employment.

81.     Defendants Lucido and Fresard knowingly and intentionally concocted a series of false allegations of wrongdoing against Plaintiff in order to end his employment.

82.     On August 25, 2022, Defendant Fresard notified Plaintiff that he was under investigation for seven false allegations of misconduct, including that he refused to file an appeal in the Rideout case, and that he had disregarded the Shelby Township Police Department's wishes to give a less favorable plea deal to the Black protestor than the four white protesters.

83.     Plaintiff was a just cause employee.

84.     Defendants held a sham "investigation meeting" on September 14, 2022.

85.     Defendants falsely accused plaintiff of alleged wrongdoing. The allegations were unfounded and were a sham.

86.     The result of the "investigation meeting" was pre-determined.

87.     Defendants refused to permit Plaintiff to call witnesses in his defense, despite relying on statements from several witnesses, including Defendants Lucido and Fresard and Plaintiff's supervisors, to support their false allegations.

88.     Although Plaintiff denied each of the claims against him, offered uncontradicted and reasonable explanations for each allegation, and provided evidence in support of his explanations to the charges alleged, on October 21, 2022, Plaintiff was suspended for 10 days without pay.

89.     In further retaliation, Plaintiff was also served with four other notices of disciplinary investigation for false and retaliatory allegations—dated October 6, November 1, and November 18, 2022.

90.     The additional allegations had no basis in fact and were a sham designed as a cover to terminate his employment.

91.     On December 16, 2022, Plaintiff received a letter from Defendant Lucido informing him that he was being placed on indefinite administrative leave effective immediately. The letter provided no reason for this adverse action.

92.     The letter instructed Plaintiff not to contact or respond to any Macomb County employees, and not to return to any Macomb County building or property in which the County conducts business.

93.     After issuing the letter, Defendants Lucido and Fresard assigned other APAs to Plaintiff's roles and advised employees that a new organizational chart would soon issue which would not include Plaintiff.

94.     On or about December 19, 2022, Plaintiff discovered that he had been locked out of his Macomb County email account.

95.     On or about December 20, 2022, Defendants Lucido and Fresard advised employees of the Prosecutor's Office of new office assignments. Defendants assigned another APA to Plaintiff's office and did not assign Plaintiff a new office.

96.     On December 22, 2022, Plaintiff's employment was terminated.

97.     The disciplinary proceedings were a sham designed to give the appearance of due process. Before the proceedings took place, Defendants had already pre-determined that Plaintiff was going to be suspended and then terminated.

98.     The sham proceedings were a mere pretense for Defendants' pre-determined decisions to suspend and terminate Plaintiff.

99.     Moreover, the sham proceedings were presided over by officials who knowingly brought false charges against Plaintiff and who were carrying out the pre-determined decision to discipline Plaintiff, including Defendant Fresard and outside counsel hand-picked by Defendants.

## COUNT I
### 42 USC § 1983 - Fourteenth Amendment Procedural Due Process
### Property Interest
### *As To All Defendants*

100.    Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

101.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

102.    Plaintiff has a protected property interest in his employment, which the State cannot deprive him of absent due process.

103.    Plaintiff has a constitutionally protected property interest in his employment with Macomb County without being subjected to false disciplinary actions and unlawful termination.

104.    Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing.

105.    Plaintiff had a significant interest in avoiding negative and permanent designations on his employment record, the tarnishing of his professional record as a practicing attorney, and unlawful termination.

106.    Plaintiff was entitled to fundamentally fair procedures to determine whether he engaged in disciplinable and/or terminable misconduct.

107.    Regardless, Defendants suspended Plaintiff for 10 days without pay, and terminated him, depriving him of his property interest without affording him basic due process rights.

108.    Defendants denied Plaintiff the opportunity to be heard in any meaningful way, as the sham proceeding was a mere pretense for Defendants' pre-determined decision to suspend Plaintiff and terminate his employment.

109.    Moreover, the pre-discipline proceedings were presided over by officials who knowingly brought false charges against Plaintiff, and who merely effectuated the pre-determined decisions to suspend and terminate Plaintiff.

110.    Plaintiff was precluded from questioning numerous witnesses because Defendants knew their testimony would have exonerated Plaintiff.

111.    Defendants attempted to and did withhold evidence from Plaintiff that would have exonerated him from their intentionally false allegations of misconduct.

112.    Plaintiff's property interest was invaded by Defendants in an arbitrary and irrational manner.

113.    Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence. The decisions to suspend and terminate Plaintiff were pre-determined, and the officials presiding over the proceedings knowingly brought false allegations against Plaintiff.

114.    Defendants agreed to, approved, and ratified this unconstitutional conduct.

115.    It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

116.    Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

117.    There exists no rational relationship between Plaintiff's actual conduct and the discipline and termination imposed against him by Defendants.

118.    In depriving Plaintiff of his constitutionally protected rights, including his professional reputation and his property interest in his employment, Defendants violated Plaintiff's right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

119.    Defendants, by their agents, representatives, and employees acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

120.    The acts of Defendants and their agents, representatives, and employees represent official policy of Macomb County and are attributable to Macomb County.

121.    At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

122.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to loss of pay and employment; false, permanent findings on Plaintiff's record for misconduct which did not occur; damage to Plaintiff's professional and personal standing and associations in his community as a practicing attorney and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment

18

opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### Violation Of Michigan's Whistleblower Protection Act
### *As to All Defendants*

123.    Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

124.    Plaintiff was an employee and Defendants were his employers covered by and within the meaning of the Whistleblowers' Protection Act ("WBPA"), MCL 15.361, *et. seq.*

125.    Macomb County and the Macomb County Prosecutor's Office constitute public bodies within the meaning of the WBPA.

126.    Plaintiff participated as a witness in Macomb County and the Macomb County Prosecutor's Office's investigation of unlawful employment activity in the form of sex, race, and disability discrimination; assisted others in exercising their rights to report unlawful employment activity in the form of sex, race, and disability discrimination within that investigation; and reported and opposed unlawful race discrimination and First Amendment retaliation against the public to Macomb County and the Prosecutor's Office.

127.   Plaintiff's protected activity as set forth above implicated Defendants Lucido and Fresard in the aforementioned unlawful activities, including in violations of ELCRA and the First Amendment.

128.   Because of Plaintiff's protected activity, Defendants Lucido and Fresard falsely accused Plaintiff of wrongdoing, including but not limited to professional malpractice and various internal policy violations, subjected him to numerous government investigations, suspended him without pay, and terminated his employment. These actions were retaliatory.

129.   Defendants knew that Plaintiff had engaged in protected activity by participating in, and assisting others in their participation in, Macomb County and the Macomb County Prosecutor's Office's investigation of unlawful employment activity.

130.   Defendants likewise knew that Plaintiff had reported race discrimination and First Amendment retaliation against members of the public.

131.   Defendants retaliated against Plaintiff by suspending and terminating him because of this protected activity.

132.   The retaliatory conduct of Defendants, their agents, representatives, and employees violated the WBPA.

133.   The actions of Defendants, their agents, representatives, and employees were intentional, wanton, willful, malicious and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

134.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to loss of pay and employment; false, permanent findings on Plaintiff's record for misconduct which did not occur; damage to Plaintiff's professional and personal standing and associations in his community as a practicing attorney and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT III
### Retaliation in Violation of Michigan's Elliot-Larsen Civil Rights Act
#### *As To All Defendants*

135.    Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

136.    At all material times Plaintiff was an employee and Defendants were his employers, covered by and within the meaning of the Elliot-Larsen Civil Rights Act, MCL § 37.2101, *et seq.* (the "ELCRA").

137.    Plaintiff engaged in conduct protected under the ELCRA including, but not limited to, opposing and complaining about Defendant's unlawful employment practices which violated the ELCRA.

138.    Plaintiff also engaged in conduct protected under the ELCRA by

opposing and making complaints of discrimination against members of the public in the provision of "public services" as defined by the statute.

139.    Defendants' treatment of Plaintiff following his protected conduct was retaliatory and occurred, at least in part, because Plaintiff opposed and made internal complaints regarding Defendants' unlawful practices, in violation of the anti-retaliation provisions of the ELCRA.

140.    Defendants also engaged in conduct prohibited by the ELCRA including, but not limited to:

(a)    conspiring to aid, abet, incite, or coerce persons to violate the ELCRA;

(b)    attempting directly and/or indirectly to commit acts prohibited by the ELCRA;

(c)    willfully obstructing or preventing persons from complying with the ELCRA; and

(d)    coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having aided or encouraged other persons in the exercise or enjoyment of, rights granted or protected by the ELCRA.

141.    Defendants took these actions to discriminate against employees and/or members of the public based, at least in part, on their race, in violation of the provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101 and § 37.2102, *et seq.*

142.   As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected. He was suspended without pay, and terminated, among other adverse actions.

143.   The actions of Defendant's employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

144.   As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of employment, earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; anxiety about the future, emotional distress, humiliation and embarrassment; loss of professional reputation; damage to his good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT VI
### Tortious Interference with a Contract or Advantageous Business Relationship or Expectancy
#### *As to Defendants Lucido and Fresard*

145.   Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

146.   Defendants Lucido and Fresard falsely accused Plaintiff of various policy violations, negligence, dishonesty, professional malpractice and other types of

wrongdoing on multiple occasions in an attempt to retaliate against and intimidate him because of Plaintiff's protected activity under federal and Michigan law.

147.    Defendants' false accusations resulted in Plaintiff's receipt of a 10-day suspension, multiple government investigations, and the termination of his employment.

148.    Defendants acted with malice, in bad faith, and without justification. Defendants knew that their allegations against Plaintiff were false and/or acted with reckless disregard to their falsity.

149.    Defendants' false accusations against Plaintiff were made to the administration of Macomb County and the Prosecutor's Office, with whom Plaintiff has a contract or business relationship or expectancy.

150.    As set forth above, Defendants took affirmative acts that demonstrate their unlawful purpose and improper motives, including but not limited to colluding to make false allegations of misconduct against Plaintiff in order to damage or end his business relationship with the County, and making oral and written statements indicating malicious intent to retaliate against Plaintiff, as set forth above.

151.    The business relationship and expectancies had a reasonably likelihood of future economic benefit for Plaintiff.

152.    Defendants knew of the contracts and business relationships and expectancies between Plaintiff, Macomb County, and the Macomb County Prosecutor's Office.

153.   By the conduct as described above, Defendants intentionally and improperly interfered with the contracts and business relationships and expectancies between Plaintiff, Macomb County, and the Macomb County Prosecutor's Office.

154.   Defendants' conduct was intended to, and did, interfere with the contracts and business relationships and expectancies between Plaintiff, Macomb County, and the Macomb County Prosecutor's Office. Defendants suspended and terminated Plaintiff's employment.

155.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered economic injuries including the loss of his employment; lost pay and benefits, loss of goodwill, harm to his professional reputation, loss of esteem and standing in the community, and loss of business opportunities.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

### A.   LEGAL RELIEF

1.   Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.   A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3.   Exemplary damages in whatever amount Plaintiff is found to be entitled;

4.   Punitive damages in whatever amount Plaintiff is found to be entitled; and

5. An award of interest, costs and reasonable attorney fees.

**B.    DECLARATORY & EQUITABLE RELIEF**

1. An order from this Court requiring Defendants to remove all documentation of discipline and disciplinary investigations related to the claims in this case from Plaintiff's record and rectify any loss of or prejudice to Plaintiff's employment benefits or seniority stemming from his suspension;

2. An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

3. An award of interest, costs, and reasonable attorney fees; and

4. Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.


Dated:  January 18, 2023                     **DEBORAH GORDON LAW**
                                             /s/Deborah L. Gordon (P27058)
                                             Sarah Gordon Thomas (P83935)
                                             Elizabeth Marzotto Taylor (P82061)
                                             Molly Savage (P84472)
                                             Attorneys for Plaintiff
                                             33 Bloomfield Hills Parkway, Suite 220
                                             Bloomfield Hills, Michigan 48304
                                             (248) 258-2500
                                             dgordon@deborahgordonlaw.com
                                             sthomas@deborahgordonlaw.com
                                             emarzottotaylor@deborahgordonlaw.com
                                             msavage@deborahgordonlaw.com

# <u>JURY DEMAND</u>

Plaintiff, **Joshua Van Laan**, by his attorneys **Deborah Gordon Law,** demands a trial by jury of all the issues in this cause.

Dated:  January 18, 2023

**DEBORAH GORDON LAW**
<u>/s/Deborah L. Gordon (P27058)</u>
Sarah Gordon Thomas (P83935)
Elizabeth Marzotto Taylor (P82061)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
msavage@deborahgordonlaw.com

27